## Boatman's Fire & Marine Insurance Company of Pittsburgh, Pennsylvania, Plff. in Err., *v.* George H. Hocking.

The mere commingling of personal property covered by separate policies of fire insurance, one policy being in the name of the plaintiff and the other

NOTE.—Compliance with provisions of a policy requiring notice of loss forthwith, or immediately, is sufficient where given in a reasonable time. West Branch Ins. Co. v. Helfenstein, 40 Pa. 289, 80 Am. Dec. 573; People's Mut. Acci. Asso. v. Smith, 126 Pa. 317, 12 Am. St. Rep. 870, 17 Atl. 605. This is true notwithstanding the act of June 27, 1883 (P. L. 165), which gave to the insured ten days to give notice of loss, and twenty days to

in the name of a firm of which plaintiff is a member, is not a breach of the conditions against prior insurance without disclosure, or subsequent insurance without notice.

Proof of loss, in this case, held to be within a reasonable time.

(Argued February 10, 1887.   Decided February 21, 1887.)

January Term, 1887, No. 171, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ.   Error to the Common Pleas of Somerset County to review a judgment on a verdict for the plaintiff in an action of assumpsit.   Affirmed.

At the trial before BAER, P. J., the following facts appeared:

On November 29, 1884, Geo. H. Hocking procured from the Boatman's Fire & Marine Insurance Company of Pittsburgh, Pennsylvania, a policy of insurance for $1,000, "on counters, shelving, stoves, safe, desk, stools, and office furniture, contained in a two-story, frame, tin-roofed building, occupied for mercantile purposes and family residence, situate west side Centre street, Meyersdale, Pennsylvania."

The policy was to continue in force for one year from November 24, 1884, and contained, *inter alia,* the following provisions: "The said company agrees to make good unto the said assured, his heirs, etc., all such immediate loss and damage, not exceeding in amount the sum insured, as shall happen by fire to the property, the amount of the loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same shall have been made by the assured and received at this office in accordance with the terms of this policy, hereinafter mentioned; but provided, that it shall be optional with the company to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within a reasonable time, giving notice of its intention so to do, within sixty days after receipt of proofs herein required."

"If the assured shall make any false representation as to the character, etc., of the property, etc., or shall have, or hereafter

present preliminary proofs, since this provision was solely for the benefit of the assured.   Springfield F. & M. Ins. Co. v. Brown, 128 Pa. 392, 18 Atl. 396.   A failure to give notice within a stipulated time does not prevent a recovery, unless such failure is made a cause of forfeiture by the policy. Coventry Mut. Live Stock Ins. Asso. v. Evans, 102 Pa. 281.

make any other insurance on the property herein insured, or any part thereof, without notice to and consent of this company in writing hereon, etc., then and in every such case this policy shall be null and void."

"In case of any other insurance upon the property hereby insured, whether prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured therein, whether such insurance be by specific or by general or floating policies. Reinsurance for any other insurance company to be on the basis of joint liability with said company; and in the event of loss this company to pay its proportion of said loss sustained by said company under its policy."

"Persons having a claim under this policy shall give immediate notice thereof to the company, and as soon thereafter as possible render a particular account and proof thereof, signed and sworn to by them setting forth: (1) A copy of the written portion of this policy and all indorsements thereon; (2) other insurance, if any, on same property or any portion thereof, with copies of the written portion of each policy and indorsements thereon; (3) the actual cash value of the subject insured, at the time immediately preceding the fire; (4) the ownership of the property insured and the interest of insured in same; (5) for what purpose, and by whom, the building insured, or containing the property insured, and the several parts thereof were used at the time of the loss; (6) if the claim be for loss on a building, the assured shall furnish a plan and specification of the building destroyed; (7) the date of the loss and the amount thereof; (8) how the fire originated as far as said persons know or believe," etc.; "and until such proofs as above required are produced and examinations and appraisals permitted the loss shall not be payable."

Geo. H. Hocking was the owner of the building containing the property insured; the counters and stools were attached to the floor and the shelving to the walls. He resided in the building, and the store was carried on by him and his brother William, in the name of Hocking Brothers.

On January 8, 1884, the firm of Hocking Brothers had obtained an insurance in the North British & Mercantile Insurance Company for $1,500, of which $500 was "on their counters,

shelving, stoves, furniture, and fixtures contained on the first floor," and "all contained in a two-story, frame, tin-roofed building, situate on the west side of Centre street, Meyersdale, Somerset county, Pennsylvania, occupied as a general store and dwelling."

This policy was to continue until November 24, 1885.

The defendant in error testified that this policy was procured by a clerk of Hocking Brothers, and that he, George H. Hocking, knew nothing of its existence until after the fire.

On December 4, 1884, the building and all its contents, and a number of other buildings, were destroyed by fire, which originated three buildings away from the Hocking building. Immediately after the fire a telegram was sent to John D. Biggert of Pittsburgh, Pennsylvania (who had placed the insurance), notifying him of the loss, and Mr. Biggert promptly informed Mr. Schenk, the secretary of the company. Two days after the fire. John D. Biggert, or his brother Joseph, who attended to his business at Meyersdale, visited the place and viewed the ruins. About the same time, J. K. Hatfield, an adjuster for some of the companies which had sustained loss by the fire, arrived at Meyersdale and attempted to adjust with Mr. Hocking. Some two weeks later Mr. Hatfield was again at Meyersdale attempting to adjust with Mr. Hocking.

About two months after the fire Mr. Hatfield called to see Mr. Hocking again, admittedly as the adjuster of the Boatman's Insurance Company. After considerable parleying Mr. Hocking, on February 20, 1885, wrote to the company that he would bring suit to recover his loss unless it was adjusted on or before March 1, 1885. In reply he received a letter from the company dated February 21, 1885, referring him to the conditions of his policy, relating to the proofs of loss, and saying: "As soon as you comply to the conditions thereof, so as to enable us to decide as to whether we have any liability or not, we will be prepared to take immediate action. You are aware that no person has any claim until they file their proofs of loss."

Mr. Hocking then wrote for blank forms of proofs of loss, and they were sent by the company on March 2, 1885. On the 20th of the same month proofs of loss were forwarded to the company, to which no objections were made and nothing further was done until Hocking commenced this suit June 1, 1885.

When the adjuster of the North British Company settled with

Hocking Brothers for the loss, the articles belonging to Geo. H. Hocking were stricken from the schedule of loss because they were "not owned by the firm but by Geo. Hocking and covered by Boatman's policy." These items were as follows: shelving, $770; counter, $330; desk, $80; total, $1,180. The amount paid by the North British Company was $450.

Each schedule of loss contained "one safe, $250," and other articles aggregating some $315, reduplicated in each list. The amount of loss, as per schedule, in this case was $1,833. The amount of loss by the schedule of the North British Company was $1,847.45.

The defendant requested the court to charge as follows:

"1. The plaintiff and his brother having, on the 8th of January, 1884, obtained a policy of insurance in the North British & Mercantile Insurance Company for $500 on the property embraced in the policy in suit, which was not made known to the defendant company when the policy in suit was obtained, violated one of the clauses in the third condition in the policy, and therefore forfeited his right to recover in this case.

"2. Said insurance in the North British & Mercantile Insurance Company having been in the sum of $500 and being on the same property, whatever sum the plaintiff remitted on the said claim should be deducted from the plaintiff's claim in this case.

"3. The plaintiff having shown that he was the owner in fee of the building, the counters and shelves were part of the realty, and the plaintiff is not entitled to recover for them in this action.

"4. If the jury believe that the plaintiff did not give the notice required by the policy, he cannot recover; and the verdict must be for the defendant."

The court in answer charged as follows:

"The first, second, third, and fourth points of the defendant we answer as one, by saying that we would have to refuse them all; and that we would be obliged to say to the jury that if they believe from the evidence that the company had notice of the loss immediately after the fire,—as to which the evidence of the secretary of the company, and any other evidence bearing on that subject, should be considered by them,—and if they also find that on the 20th of March, 1885, a regular proof of loss was given, then we hold that such proof of loss was in a reasonable time, as no time is fixed in the policy, and as the loss

exceeds the amount of the policy, the verdict should be for the plaintiff."

The verdict was for the plaintiff, for $1,083.

The assignments of error specified the refusal of the defendant's points, and the charge of the court.

*W. H. Koontz,* for plaintiff in error.—Conditions attached to a policy are part of the policy, as much as if incorporated in the instrument itself. Fire Asso. v. Williamson, 26 Pa. 196; Trask v. State F. & M. Ins. Co. 29 Pa. 198, 72 Am. Dec. 622; Inland Ins. & Deposit Co. v. Stauffer, 33 Pa. 397; De Silver v. State Mut. Ins. Co. 38 Pa. 130; Kensington Nat. Bank v. Yerkes, 86 Pa. 227.

A condition printed on the back of the policy, but not signed, is part of the policy. Bank v. Yerkes, 1 W. N. C. 508.

A previous or subsequent insurance, without notice, under a policy requiring notice of such insurance upon pain of forfeiture, discharges the insurers from any obligation to pay for a loss happening under such circumstances. That this should be the effect of the concealment or failure to give notice, as the case may be, is not only a part of the contract and obligatory upon that ground, but the forfeiture is just and reasonable. May, Ins. pp. 437, 438.

A warranty in the law of insurance is a written stipulation in the policy, applicable either to matters present or future, and in the former case is called an affirmative and in the latter a promissory warranty; and the policy being signed by the underwriters only, these warranties are made effectual by treating them as conditions precedent, upon the truth or fulfilment of which the entire contract depends. Angell, Ins. §§ 140, 142, 145, 147; Arnould, Ins. 58; Ellis, Ins. 28; Borradaile v. Hunter, 5 Mann. & G. 639; Newcastle F. Ins. Co. v. Macmorran, 3 Dow, P. C. 262.

If other insurance exists at the time and is not indorsed, although communicated or known to the underwriters, it is not enough. The condition is not complied with and no contract exists. Carpenter v. Providence Washington Ins. Co. 16 Pet. 512, 10 L. ed. 1051; Barrett v. Union Mut. F. Ins. Co. 7 Cush. 175; 1 Phillips, Ins. 477; Hutchinson v. Western Ins. Co. 21 Mo. 97, 64 Am. Dec. 218; Security Ins. Co. v. Fay, 22 Mich. 467, 7 Am. Rep. 670; Allemania F. Ins. Co. v. Hurd, 37 Mich. 11, 26 Am. Rep. 491.

Subsequent insurance, void by its own terms, because it is additional and without notice of prior insurance, is no insurance within the meaning of the usual conditions against other insurance. May, Ins. 439; Stacey v. Franklin F. Ins. Co. 2 Watts & S. 506; Mitchell v. Lycoming Mut. Ins. Co. 51 Pa. 402.

On the contrary, it is held elsewhere that a subsequent policy, whether legally enforceable or not, or whether voidable on its face, or voidable for extrinsic matter, works a forfeiture of the prior policy. Funke v. Minnesota Farmers' Mut. F. Ins. Asso. 29 Minn. 347, 43 Am. Rep. 216, 13 N. W. 164, and numerous authorities cited in note to said case; Phœnix Ins. Co. v. Lamar, 106 Ind. 513, 55 Am. Rep. 765, 7 N. E. 241.

The question of recovery under the prior policy turns upon whether the subsequent policy has been in fact avoided. If the subsequent policy is recognized by the company issuing it as a valid policy, any breach of condition being waived, this makes it a valid insurance and constitutes it a good defense to an action upon the prior policy; but if the subsequent policy has been avoided by the company, there is no other insurance so as to defeat a recovery on the prior policy. Hubbard v. Hartford F. Ins. Co. 33 Iowa, 325, 11 Am. Rep. 125.

This conflict of authority, however, cannot affect this case. The first class of cases holds the prior policy valid, although containing a condition against future insurance, because the second policy is void, containing a like condition not complied with. It is covered by the second class, and fairly comes within the rule of the third, if it could be applied to former policies, because in this case the former policy was paid.

There are numerous cases in which the prior insurance is held to be good, because of a subsequent invalid policy, made so by noncompliance with the condition requiring notice of the former policy to be given. Hubbard v. Hartford F. Ins. Co. 33 Iowa, 325, 11 Am. Rep. 125; Gee v. Cheshire County Mut. F. Ins. Co. 55 N. H. 65, 20 Am. Rep. 175; Landers v. Watertown F. Ins. Co. 86 N. Y. 414, 40 Am. Rep. 554.

The second policy is avoided by the existence of the first policy without notice, and the first policy is equally avoided by the existence of the second policy without notice. Somerfield v. State Ins. Co. 8 Lea, 547, 41 Am. Rep. 662; Funke v. Minnesota Farmers' Mut. F. Ins. Asso. 29 Minn. 347, 43 Am. Rep. 216, 13 N. W. 164.

*Coffroth & Ruppel,* for defendant in error.—Nothing to indicate any fraudulent intent on the part of Mr. Hocking appears in the testimony. There was no policy covering the same property described in the policy issued by plaintiff in error. The policy issued by the North British Company was on property owned by the firm of Hocking Brothers, and as only the true owner of property can recover from an insurance company for loss, Geo. H. Hocking could not have recovered one dollar from that company for property he owned in his individual right.

It is additional and valid insurance, prior or subsequent, upon the same subject, risk, and interest, effected by the same insured or for his benefit, and with his knowledge or consent, which is a breach of a condition against other insurance without notice. May, Ins. 438.

Double insurance takes place when the assured makes two or more insurances on the same subject, the same risk, and the same interest. Sloat v. Royal Ins. Co. 49 Pa. 18; Royal Ins. Co. v. Roedel, 78 Pa. 19, 21 Am. Rep. 1.

The insured has failed to perfect his contract with the subsequent underwriter; by omitting to have the prior insurance allowed of and specified on the policy as is required, the prior insurance is not invalidated or affected. An assurance to avoid the policy must be a valid and legal policy, and effectual and binding upon the assurers. Stacey v. Franklin F. Ins. Co. 2 Watts & S. 506.

When the words are, without violence, susceptible of two interpretations, that which will sustain the assured's claim and cover the loss, must in preference be adopted. Teutonia F. Ins. Co. v. Mund, 102 Pa. 94.

If there is any obscurity in the meaning of the policy, it is the fault of the company in not giving it clear expression; and as between the parties it must be construed most strongly against the insurer. Grandin v. Rochester German Ins. Co. 15 W. N. C. 4.

Prima facie, the insured is entitled to have his loss made good immediately upon its happening; and when that loss appears to be an honest one, we are not disposed to scan very strictly the evidence which tends to rebut a technical forfeiture of the right to payment. Pennsylvania F. Ins. Co. v. Dougherty, 102 Pa. 572.

PER CURIAM:

Although there was some mingling of the goods, yet the differ-

ent policies did not legally cover the same property. In considering the substance of the case, rather than in looking at some of the irregular acts of the insured, we think no violence was done to the law by the answers to the points or in the charge of the court.

Judgment affirmed.